SPRING v. HOWARD.   See Case No. 13,260.

## Case No. 13,260.

SPRING et al. v. PACKARD.

SAME v. HOWARD.

[1 Ban. & A. 531; [1] 7 O. G. 341.]

Circuit Court, D. Massachusetts.   Oct. 1874.

PATENTS—ANTICIPATION—EQUIVALENTS —TURNING LATHES.

1. In a patent for a lathe for turning irregular forms, the claim was. for "the combination of a griping-chuck, by which an article can be so held by one end as to present the other free to be operated upon, with a rest preceding the cutting tool, when it is combined with a guide cam or its equivalent which modifies the movement of the cutting tool, all operating together for the purpose set forth." The evidence showed, that prior to the invention, a lathe had been constructed and used for thirteen years, having the griping chuck, the rest, the cutting tool, and, instead of a guide cam, a fixed pattern, which was, at the date of the patent, a well-known equivalent for a cam pattern or guide: Held, that the invention patented was anticipated, and the patentee was not the first inventor of the improvements claimed, although the anticipating invention had been guarded from view, to conceal the mode of its operation.

2. The patent granted to Charles Spring and Andrew Spring, May 10, 1859, for improvement in lathes for turning irregular forms, held invalid for want of novelty.

[Cited in Spring v. Domestic Sewing Machine Co., 9 Fed. 505.]

[These were bills in equity by Charles Spring and others against James A. Packard and Charles Howard to enjoin the infringement of letters patent No. 23,957, granted to complainants May 10, 1859.]

George E. Betton, for complainants.
James B. Robb, for defendants.

LOWELL, District Judge. The plaintiffs are the inventors and owners of a valuable

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

and ingenious improvement in lathes, for turning irregular forms, for which a patent was issued to them May 10, 1859, but which they testify was completed in the summer of 1857. They describe the machine with fulness and accuracy in their specification. Its principal application was intended to be, and is, for turning sewing machine needles and similar articles, which are to be brought to a point, and the claim is for, "the combination of a griping-chuck, by which an article can be so held by one end as to present the other free to be operated upon, with the rest preceding the cutting-tool, when it is combined with a guide cam, or its equivalent, which modifies the movement of the cutting-tool, all operating together for the purpose set forth."

There is no doubt, upon the testimony, that the plaintiffs were the original and meritorious inventors of an improvement over the machines, then in general use, for turning sewing-machine needles. But a machine was brought forward by the defendants, which one Pernot swears he made in New York, in 1853, and operated there for thirteen consecutive years in turning needles, in great quantities, for several of the principal manufacturers of sewing machines, and which appears to contain all the elements of the plaintiffs' combination, working together in the same way, and producing the same results. The dates are proved by Pernot and by another witness, and corroborated by circumstantial evidence, and might have been disproved, if untrue, because the manufacturers could have testified concerning the needles which they are said to have bought of Pernot. No such contradiction is given. This machine has the griping-chuck, the rest, the cutting-tool, and, instead of a guide cam, a pattern, which, so far as this case is concerned, appears to be an equivalent; and, as we understand the testimony, it is, that a fixed pattern was, generally speaking, a well-known equivalent for a cam-pattern or guide in machines of this kind, at the date of the patent.

It has been argued, that Pernot's machine had no adjusting-screw. It had a screw, which, it is insisted, should be called a set screw, and which was, no doubt, less useful in some respects than the adjusting screw of the plaintiffs' machine. The plaintiffs, however, do not claim the adjusting-screw as part of their combination. Mr. Waters, being asked, whether it is part of the combination, says: "Hardly that, that is to say, hardly an element. I regard as essential, that the organization should be such as to admit of the convenient use of a screw; and that that screw should make a part of the organization, I regard as essential as an adjunct to the combination, so essential that, as I have said, I would not give a sixpence for any one of them, for the purpose of turning sewing-machine needles, without it."

It is, then, an important adjunct, rather than an essential element, and Pernot's screw was a sufficiently good adjunct to enable his combination to work successfully in making needles in the way of his business; and the difference in the screw would have been no defence, if his machine had been later in date than the patented one.

It is further said, that Pernot did not turn his needles to a point in the machine. He gives reasons for not doing this work, but says, that he did turn points for a carding machine; and that his lathe needed only a change of pattern to make it applicable to turning the points of needles. This is obviously true, and, as the particular form of pattern used was not of the essence of the invention, we are of opinion, that Pernot's machine contains the whole patented combination.

It is not denied that all the elements of the combination were old, and well known, before 1857; it is only contended, that the precise combination was new, as it undoubtedly was, to the trade generally, and to the patentees themselves; but, we are obliged to say, that Pernot's machine, which was not patented, and was somewhat guarded from view, perhaps for the very purpose that its mode of operation might not be generally known, was yet, by the law, such an anticipation of the plaintiffs' combination, that they were not the first, though they were original, inventors thereof.

Bill dismissed with costs.

[For other cases involving this patent, see Case No. 13,258, 9 Fed. 505, 13 Fed. 446.]